929 So.2d 131 (2006)
Margaret Gaffney LEAF
v.
Peter Albin LEAF.
No. 2005-CA-0592.
Court of Appeal of Louisiana, Fourth Circuit.
March 2, 2006.
*132 Jane Ettinger Booth, Booth & Booth, APLC, Amite, LA, Stacey LaFleur-Spawn, New Orleans, LA, for Plaintiff/Appellant.
Bennett Wolff, Hayley Harmon, Wolff & Wolff, Metairie, LA, for Defendant/Appellee.
(Court composed of Judge TERRI F. LOVE, Judge LEON A. CANNIZZARO JR., Judge ROLAND L. BELSOME).
ROLAND L. BELSOME, Judge.
Margaret Gaffney Leaf ("Ms.Leaf") appeals the trial court's denial of her petition to permit relocation.
Appellant, Ms. Leaf, and Appellee, Peter Leaf, were married in Santa Fe, New Mexico, on May 20, 1997. They had one daughter, Pearlie Leaf ("Pearlie"), who was born November 13, 1998. Ms. Leaf filed for divorce on January 21, 2000. Ms. Leaf has been the primary caretaker of Pearlie since Pearlie's birth. Peter Leaf has since re-married and lives with his wife and new baby daughter, Corrina.
On a visit to Maryland, in September of 2004, Ms. Leaf interviewed for a position at Salisbury Middle School. Soon after, she was given a verbal offer of a teaching position at Salisbury Middle School. Ms. Leaf then gave notice to her former spouse, Peter Leaf, regarding her intention to relocate to Salisbury, Maryland with Pearlie prior to filing her petition to relocate. Peter opposed the relocation. A hearing was held on November 16-18, and 23, 2004. Ms. Leaf's request to relocate was subsequently denied by a judgment rendered January 7, 2005.
An appellate court reviews a trial court's determinations under the manifest error-clearly wrong standard. "A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong.'" Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); See Rosell v. ESCO, 549 So.2d 840 (La.1989). In Mart v. Hill, 505 So.2d 1120, 1127 (La.1987), the Louisiana Supreme Court reiterated the two-part test for the reversal of a fact finder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous.
The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The Supreme Court recently held that a "trial court's determination in a relocation matter is entitled to great weight and will not be overturned an [sic] appeal absent a clear showing of abuse of discretion." Curole v. Curole, XXXX-XXXX, p. 4 (La.10/15/02); 828 So.2d 1094, 1096.
La. R.S. 9:355.13 sets forth the burden of proof in a relocation hearing, and provides:

*133 The relocating parent has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child. In determining the child's best interest, the court shall consider the benefits which the child will derive either directly or indirectly from an enhancement in the relocating parent's general quality of life. (emphasis added).
As the Supreme Court noted in Curole, "our legislature made a policy determination that relocation is not to be automatically considered as being in the best interest of the child." XXXX-XXXX, p. 5 (La.10/15/02); 828 So.2d at 1097. Thus the legislature installed a two-part burden on those wishing to legally relocate a child. Ms. Leaf has shown good faith, but the parties disagreed on whether the move was in the best interest of the child.
La. R.S. 9:355.12 sets forth twelve factors the court must consider in reaching its decision on a proposed relocation. After thoroughly considering all twelve factors together with testimony of several witnesses, the trial court determined that relocation would not be in the best interest of Pearlie and denied Ms. Leaf's motion.
Ms. Leaf contends that the trial court erred in determining that Ms. Leaf's previous requests for supervised visitation amounted to her failure to promote her daughter's relationship with the defendant. La. R.S. 9:355.12(A)(5) requires the trial court to consider "[w]hether there is an established pattern of conduct of the party seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party." She defends the many accusations she made against Peter Leaf as the legitimate concerns of a good mother, and she asserts that she was only following the recommendations of Eugenia Patru, a court-appointed custody evaluator. In the trial court's reasons for judgment, Judge Cates wrote:
Mrs. Leaf testified extensively at trial and argued in memo that she has never thwarted or refused Mr. Leaf's visitation. Instead, she asserts that she has attempted to foster the father/daughter relationship.
Mr. Leaf was denied visitation with his daughter for a significant amount of time in 2000 and 2001. Mrs. Leaf asserts that some of these missed visits were the result of confusing Court Orders regarding supervision and that she has never been found to have violated any Court Order on visitation. The Court finds Mrs. Leaf's testimony on this subject insincere and disingenuous.
Mrs. Leaf has advocated supervised visitation almost from the outset. Mrs. Leaf argues that it was the Judge who ordered the supervision and she was merely following that order. While it is true that supervision was ordered by the Court, those orders were made following allegations and/or insinuations by Margaret Leaf of abuse or impropriety on the part of Peter Leaf. Those allegations and/or insinuations made by Margaret Leaf, which were the basis for orders requiring supervised visitation, include:
a) Allegations by Margaret Leaf that she was stabbed with a fish filet knife by Peter Leaf at their home in front of two friends during a dinner party. Although Mrs. Leaf testified regarding the severity of the incident, she stated that immediately after the stabbing, she merely cleaned the wound and rejoined the dinner party, as if nothing had happened. Neither of the two friends/witnesses testified regarding the alleged stabbing, no one saw the wound, the police were not called, and Mrs. Leaf at no point attempted to get medical treatment *134 for the wound. Mr. Leaf denies the entire incident. The Court finds Mrs. Leaf's description of this unsubstantiated incident to be incredible.
b) Allegations by Margaret Leaf to Dr. [sic] Patru regarding possible criminal conduct, including some drug and narcotics sale and use by Peter Leaf. The Court also heard some vague allegations regarding pornography. None of these allegations and insinuations were supported by any facts.
c) Allegations by Margaret Leaf regarding alleged abuse of Pearlie by her father. These include allegations that Peter Leaf failed to get appropriate medical attention for Pearlie after she fell and hit her head and allegations that while in Peter's care, a dog hair become [sic] lodged in her urethra. It should be noted that both Mr. and Mrs. Leaf have dogs in their homes and that no one, other than Mrs. Leaf herself, saw the alleged dog hair. The Court finds Mrs. Leaf's reports of those incidents to professionals were exaggerated and not supported by any independent evidence.
d) Innuendos of sexual abuse, including Mrs. Leaf's statements that her daughter reported that her "vulva" was hurt at her daddy's house and that she and her daddy played "games" in the bathroom. There was not one scintilla of evidence of any sexual abuse presented, yet the statements made by Margaret Leaf to professionals would suggest otherwise.
The Court finds very significant that for several years, and as late as this year, Margaret Leaf has been advocating supervised visitation and has come up with one allegation after another to support her position. Yet, now that she wishes to relocate, she proposes extended unsupervised visitation, including seven weeks of summer visitation. Peter Leaf questioned, and this Court also questions, how Margaret's requests for supervised visitation in the summer of 2004 can be reconciled with her proposal that if relocation is granted, Peter can be granted seven weeks of unsupervised summer visitation. Mrs. Leaf's sudden and complete reversal of position, in this Court's opinion, evidences her motives and insincerity regarding the many allegations of impropriety on the part of Mr. Leaf. Mrs. Leaf has for years thwarted Peter Leaf's visitation with her allegations and insinuations of impropriety and there is no reason for this Court to believe that she has suddenly changed and is now ready to foster a long distance relationship between Pearlie and her father.
This factor most significantly weighs against relocation.
The record contained undisputed evidence that Ms. Leaf deprived Peter Leaf of court-ordered supervision on multiple occasions. Although Ms. Leaf was not found to be in violation of any court order, it was not clear error for the trial court to find that this behavior thwarted Pearlie and Peter Leaf's relationship.
The record also shows that for years Ms. Leaf vehemently opposed unsupervised visitation between Peter Leaf and Pearlie, which thwarted their relationship. The allegations were serious: Peter Leaf sexually molested Pearlie; Peter Leaf neglected Pearlie when she hurt herself; and Peter Leaf dabbled in alcohol, drugs, and pornography. The allegations against Peter Leaf by Ms. Leaf were extensive, serious, and ultimately unfoundednone of the allegations was ever supported or substantiated. Once she decided to seek relocation, weeks after a hearing in which Ms. Leaf aggressively opposed unsupervised *135 visitation, Ms. Leaf proposed a custody schedule that would allow Peter Leaf seven continuous weeks of unsupervised visitation during the summers. The trial court found that Ms. Leaf's rapid reversal of her position on unsupervised visitation made her previous allegations seem insincere and disingenuous. This was a reasonable interpretation of the circumstances, and it was not manifestly erroneous for the trial court to find that Ms. Leaf thwarted a relationship between Peter Leaf and Pearlie.
This case is consistent with Curole, where the Supreme Court upheld the trial court's denial of relocation finding that the relocating parent "gently encourages" each transition to become an ordeal. XXXX-XXXX, p. 8 (La.10/15/02); 828 So.2d at 1099. Here, multiple unsubstantiated allegations of abuse more than gently encouraged ordealsthey discouraged the formation and growth of a relationship between Pearlie and Peter Leaf.
In her next assignment of error, Ms. Leaf argues that the trial court abused its discretion when it found that Pearlie and Ms. Leaf's quality of life would not be enhanced by relocation. In making its determination on a proposed relocation, La. R.S. 9:355.12(6) asks the trial court to consider, "[w]hether the relocation of the child will enhance the general quality of life for both the custodial parent seeking relocation and the child, including but not limited to financial or emotional benefit or educational opportunity." Ms. Leaf also points our attention to La. R.S. 9:355.13, which provides that in determining whether a proposed relocation is in a child's best interest, the trial court "shall consider the benefits which the child will derive either directly, or indirectly from an enhancement in the relocating parent's quality of life."
The trial court considered the benefits of relocation to the child. Pearlie would be able to enroll in a great school in Maryland. Her mother would receive a raise. They would be able to live with Mr. Greiner, Ms. Leaf's fiance, who also has a good job in the area. Ms. Leaf's quality of life would probably increase.
However, Pearlie is enrolled in a great school in New Orleans, Lusher Elementary. Ms. Leaf's increase in salary would be offset by Pearlie's increase in tuition costs, from minimal expenses (Lusher Elementary is a public school) to around $6,000.00 per year. And most significantly, Pearlie would be across the country from her father, step-mom and baby sister with whom she enjoys a good relationship. Ultimately, if relocation is denied, Pearlie will have the opportunity to have frequent and continuous contact with two loving families in the New Orleans Metropolitan area. Ms. Leaf has a master's degree in education and would be employable in the New Orleans area. We cannot say that it was manifest error for the trial court to find that Pearlie's life would not be enhanced by relocation.
Next, Ms. Leaf contends that the trial court committed manifest error when it found that the feasibility of preserving a good relationship upon relocation between the defendant and his child is remote. La. R.S. 9:355.12(3) orders the trial court to consider "[t]he feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties."
In his reasons for judgment, Judge Cates explained:
The Court finds that the feasibility of preserving a good relationship between Pearlie and Peter, considering the logistics and financial circumstances of the *136 parties, is remote. None of the parties herein is financially secure to the point where frequent and regular travel from Maryland to New Orleans would be insured. Peter Leaf is a self-employed carpenter and testified that he made about $12,000 last year. He is the only source of support for his family, at this time. Margaret Leaf testified that she would experience a $7,000 raise upon relocating to Salisbury and would have a good chance of frequent financial advancement. Conversely, the Salisbury School, which costs over $9,000 per year, will significantly add to expenses. Mrs. Leaf's testimony regarding scholarships was speculative. The Court also recognizes that air travel for a child and adult to and from New Orleans and Salisbury on a regular basis would be a significant financial burden that the Court is not convinced the parties could bear.
The distance between New Orleans and Salisbury, combined with the financial circumstances of the parties, suggests that the feasibility of preserving a good relationship between Peter and Pearlie is improbable.
The record supports the trial court's determination that none of the parties is financially well off. Peter is a carpenter, and Ms. Leaf is a schoolteacher. Also, as Pearlie becomes more involved in school and extra-curricular activities, her freedom and ability to travel will be limited. Frequent air travel would be both a financial and logistical burden on both parties; therefore, we believe that the trial court's determination was not manifestly erroneous.
In her final assignment of error, Ms. Leaf contends that the trial court committed manifest error when it found that Peter Leaf's ownership of his own business is sufficient to determine relocation would not be feasible. La. R.S. 9:355.12(10) demands that the trial court also examine "the feasibility of a relocation by the objecting parent." In its reasons for judgment, the trial court explained why relocation was not feasible for Peter Leaf.
Peter Leaf is just now, after several years, beginning to develop his business here in New Orleans, which relies heavily on personal contacts. He has none of those contacts in Maryland. He is the sole support for his family, at this time. The Court does not find that it is feasible for Peter to relocate with his family to Maryland.
Mr. Leaf is a carpenter and contractor who has developed his business and started a new family in New Orleans. Whether this court would have made the same determination as the trial court is not the issue. In light of the evidence presented at trial, it was not manifestly erroneous for the trial court to find it was infeasible for Peter Leaf to move to Maryland.

CONCLUSION
The trial court examined the twelve factors set forth in La. R.S. 9:355.12, and looking at the totality of the factors, he found that relocation would not be in the best interest of Pearlie Leaf. Ms. Leaf only challenges his determination on four of those factors, and we find that those determinations were not clearly erroneous. Ms. Leaf failed to meet her burden at trial to justify relocation. Therefore, the trial court's denial of Ms. Leaf's request for relocation is affirmed.
AFFIRMED.